947 F.2d 941
 34 ERC 1642, 22 Envtl. L. Rep. 20,331
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
S. Paul HOBBS; Donna M. Hobbs, his wife; Phillip Ray
Hobbs; Dorothy V. Hobbs, his wife, Plaintiffs-Appellants,
v.
UNITED STATES of America; William Reilly, Administrator,
United States Environmental Protection Agency (A-100);
Stanley L. Laskowski, Acting Administrator, United States
Environmental Protection Agency, Region III; Greene A.
Jones, Director, 90-1861 Environmental Services Division,
United States Environmental Protection Agency, Region III;
John O. Marsh, Jr., and/or; Richard L. Armitage, after
confirmation, Secretary of the Army; Lieutenant General
Henry J. Hatch, Chief, Army Corps of Engineers; Major
General James W. Van Loben Sels, North Atlantic Division
Engineer; Joseph H. Thomas, Norfolk District Engineer,
Defendants-Appellees.
 No. 90-1861.
 United States Court of Appeals, Fourth Circuit.
 Argued May 7, 1991.
Decided Nov. 8, 1991.
As Amended Nov. 25, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk, Rebecca B. Smith, District Judge. (CA-89-327-N)
 Argued: Richard Russel Nageotte, Nageotte, McCormack, Krein & Gray, Woodbridge, Va., for appellants.
 David Aiken Carson, Environmental and Natural Resources Division, United States Department of Justice, Washington, D.C., for appellees.
 On brief: James Scott Krein, Nageotte, McCormack, Krein & Gray, Woodbridge, Va., for appellants.
 Richard B. Stewart, Assistant Attorney General, David C. Shilton, Apphia T. Schley, Environmental and Natural Resources Division, United States Department of Justice, Washington, D.C., for appellees.
 E.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, STAKER, United States District Judge for the Southern District of West Virginia, Sitting by Designation, and KAUFMAN, Senior United States District Judge for the District of Maryland, Sitting by Designation.
 OPINION
 PER CURIAM:
 
 
 1
 These appeals arise from a civil enforcement action brought by the Environmental Protection Agency for alleged violations of the Clean Water Act ("CWA"), 33 U.S.C. § 1251 et seq., by Phillip and Dorothy Hobbs as well as the couple's son and daughter-in-law, Paul and Donna Hobbs.[1] The violations stem from the clearing, draining, and constructing of roads on approximately 50 acres of alleged wetlands to create hay fields. All of the Hobbses were subjected to penalties for violations of the CWA by the district court. The Hobbses appeal the district court's decision on various grounds. Finding none of their arguments persuasive, we affirm the district court's decision.
 
 I.
 A.
 
 2
 A brief review of the statute is necessary for an understanding of the law of this case. The Clean Water Act is a comprehensive statute designed to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." CWA § 101(a)(2), 33 U.S.C. § 1251(a). In accordance with this mandate, the Act bars the discharge of pollutants into waters of the United States except in compliance with a permit issued under the Act. CWA § 301(a), 33 U.S.C. § 1311(a). The term pollutant includes dredged and fill material consisting of soil, rock, and sand. CWA § 404, 33 U.S.C. § 1362(6). The Hobbses do not contest that their discharge material fits within the definition of a pollutant.
 
 
 3
 The term "waters of the United States" is not explicitly defined under the statute. The Act does define "navigable waters," however, as waters of the United States. 33 U.S.C. § 1362(7). The term "navigable waters" has been given the broadest constitutional understanding. A Legislative History of the Water Pollution Control Act Amendments of 1972, at 178.
 
 
 4
 "Waters of the United States" is also defined as waters adjacent to other waters of the nation. 40 C.F.R. § 230.3(s); United States v. Riverside Bayview Homes, Inc., 474 U.S. 121 (1985). EPA defines "adjacent" as bordering, contiguous, or neighboring. 40 C.F.R. § 230.3(a). Moreover, wetlands separated from other waters of the United States by "man-made dikes or barriers, natural river berms, beach dunes and the like are 'adjacent wetlands' " according to the EPA. 40 C.F.R. § 230.3(b). Finally, both the EPA and the Army Corps of Engineers ("Corps") define wetlands as:
 
 
 5
 those areas that are inundated or saturated by surface or groundwater at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions. Wetlands generally include swamps, marshes, bogs, and similar areas. 40 C.F.R. § 230(t); 33 C.F.R. § 328(b).
 
 
 6
 The EPA is authorized under the Act to issue a Finding of Violation and a Compliance Order for any violation of CWA § 301(a). 33 U.S.C. § 1319(a). Moreover, EPA may commence a civil action for appropriate relief for a violation of CWA § 301(a).
 
 B.
 
 7
 For the instant case, there are two relevant manuals for wetlands determinations, one produced by the EPA and the other by the Corps. Both manuals are used to aid in the determination of what constitutes wetlands. Each manual relies on three parameters to make a determination: hydrology, vegetation, and soils. The Corps of Engineers Delineation Manual was adopted in 1987. The EPA manual was adopted April 1988.[2] There is also an interagency manual, adopted by the EPA and the Corps, which was adopted January 10, 1989. The joint manual,[3] like the EPA manual, uses the three parameter test in a manner that expands the definition of wetlands. The jury was allowed to consider the multiparameter standard in each of the manuals.
 
 II.
 
 8
 Phillip and Dorothy Hobbs own about 169 acres in Ware Neck, Gloucester County, Virginia. The Hobbses' son and daughter-in-law, Paul and Donna, also own 37 acres in the county. The combined property contains approximately 206 acres ("Hobbses' property"). The jury found this parcel to be wetlands adjacent to the Ware River.
 
 
 9
 The Hobbses cleared, drained, and constructed roads on approximately 50 acres of wetlands to create hay fields. In the process, the elder Hobbs discharged, dredged, or filled material onto their wetlands in 1980, 1984, and 1985. The younger Hobbs did the same in 1986, 1987, and 1988. The Hobbses, however, did not apply for a § 404 permit from the Corps, as required by the CWA.
 
 
 10
 The Hobbses contend that they did not apply for a permit because they were under the impression that they were not required to do so. On September 29, 1988 an official of the U.S. Fish and Wildlife Service ("FWS") went to the Hobbses property and told Paul Hobbs they might be doing work on nontidal wetlands. The FWS official arranged a site visit by a Corps official. The Hobbses contend they overheard the two men talking and expressing doubt about whether the land was in fact wetlands. When Paul Hobbs asked about the property, the Corps official stated that "it was a grey area of enforcement for the Corps of Engineers ... and he didn't see where the [Hobbses] had ... done anything wrong." Moreover, the Corps employee told the Hobbses that he would get back to them about whether their land was wetlands; but he never told them whether the property was wetlands nor did the official tell them about a permit.
 
 
 11
 EPA issued the Hobbses a Findings of Violation and Compliance Order, or Administrative Order, on March 23, 1989. EPA subsequently amended the order on April 25, 1989.
 
 III.
 
 12
 On April 25, 1989, the Hobbses filed a complaint challenging the EPA's Findings of Violation and Compliance Order issued against them under § 404. On May 4, 1989, the district court issued a preliminary injunction allowing the Hobbses to continue to farm that portion of the land previously converted to hayfields.
 
 
 13
 The government in turn filed a counterclaim on June 23, 1989, charging the Hobbses with violating CWA § 301(a) by discharging pollutants into wetlands without a permit. This counterclaim ultimately became the only cause of action in this proceeding, when, on December 14, 1989, the district court dismissed the Hobbses' complaint and granted summary judgment in favor of the government with respect to its counterclaim.
 
 
 14
 The trial was split into a liability phase determined by jury and a penalty/remedy phase determined by the court. At the close of the first phase, the jury found that the couples' property was wetlands adjacent to waters of the United States and that they had indeed discharged pollutants onto their wetlands.
 
 
 15
 Following the penalty phase, the district court entered a Final Order on August 22, 1990. The court held that: (1) the Hobbses could continue to grow hay on the parcels of land already cleared; (2) the parties must either agree to a restoration plan for the 25 acres in transition or allow the parcel to revegetate naturally; (3) the undisturbed portion of the wetlands must remain that way; (4) as permitted by the statute, the Hobbses could change the use of any of the parcels upon approval of a permit; and (5) the elder Hobbs were ordered to pay $100.00 in civil penalties, while the younger Hobbs were required to pay $200.00.
 
 
 16
 On August 24, 1990, the district court issued a memorandum opinion and order addressing the post-trial motions. The court denied the Hobbses' motions for judgments notwithstanding the verdicts or new trials. These motions were based on a sixfold argument. All of the contentions were rejected. The district court held that: (1) EPA has independent authority to make jurisdictional determinations under the CWA; (2) the wetlands manuals were guidance materials, not substantive rules; (3) adjacent wetlands may be defined as waters of the United States under the CWA because the CWA is to be applied broadly under the Commerce Clause and in light of the ecological connection between waters and adjacent wetlands; (4) man-dug (sic), non-tidal drainage ditches can be waters of the United States when they are constructed in wetlands; (5) good faith is not a defense to the strict liability violation alleged; and (6) there is no estoppel against the government absent affirmative misconduct by the government.
 
 
 17
 The district court also denied a second JNOV motion because the evidence at trial supported the jury's finding that the Hobbses' properties are jurisdictional wetlands. Finally, on October 24, 1990, the trial court issued a ruling from the bench denying the Hobbses' Fed.R.Civ.P. 60(b) motion. The Hobbses appealed to this court.
 
 IV.
 A.
 
 18
 As previously noted, the Hobbses make six arguments, which we shall address in turn. The Hobbses first raise the issue of whether the EPA has independent enforcement authority over violations of sections 404 and 301 of the CWA, 33 U.S.C. §§ 1311, 1344. According to their reasoning, the question is whether EPA has the authority to enforce § 404 of the CWA when the issuance of a permit allowing pollutants is the sole province of the Corps. They contend that because the Corps did not find that the Hobbses were discharging pollutants onto wetlands nor required them to secure a permit, the EPA has nothing to enforce. Merely pointing to 33 U.S.C. § 1342, as the statutory grant of permitting authority to the Corps, however, does not mean that EPA lacks independent enforcement authority. Reading the whole of the statute reveals the Hobbses' argument to be proof-texting.
 
 
 19
 It should be noted from the outset, that as the Hobbses have not applied for a permit, it cannot be maintained that they were denied one. Moreover, nothing in the record suggests that the Corps actually refused to exert jurisdiction over the Hobbses' property through a wetlands determination.
 
 
 20
 Under 33 U.S.C. § 1311(a) the discharge of a pollutant is illegal "except" as in compliance with sections authorizing permits. Thus, the discharge itself is illegal. Accordingly, the Hobbses need not be required to secure a permit and subsequently pollute to violate the Act. The language of the Act confers upon EPA the authority to issue a Finding of Violation and a Compliance Order or to institute a civil action for any violation of CWA § 301(a). CWA § 309(a)(3); 33 U.S.C. § 1319(a)(3). Moreover, the Act authorizes the commencement of a civil action for appropriate relief, CWA § 309(b); 33 U.S.C. § 1319(b). Finally, permitless discharges of dredged and fill material are within the enforcement authority of EPA. Administrative Authority to Construe Section 404 of the Federal Water Pollution Control Act, 43 Op.Att'y Gen. No. 15 (Sept. 5, 1979).
 
 
 21
 This view is supported by the fact that EPA has independent authority to make wetlands determinations. In Ayolles Sportmen's League, Inc. v. Marsh, 715 F.2d 897, 903 n. 12, the Fifth Circuit noted that the EPA and the Corps reached an agreement that the latter would have the responsibility for making final determinations. Moreover, the ultimate authority for determining the reach of navigable waters under § 404 of the CWA belongs to the EPA. Administrative Authority, supra.
 
 
 22
 In National Wildlife Federation v. Hanson, this Court recognized that while both the Corps and EPA "are responsible for the issuance of permits under the CWA and enforcement of their terms," EPA is the ultimate authority. 859 F.2d 313, 315-316 (4th Cir.1988). EPA would not be much of an authority if it could make wetlands determinations, issue permits, but could not enforce the very rule for which those permits provide the exception.
 
 B.
 
 23
 The second issue is whether the EPA's wetlands delineation manuals are interpretive guidance documents or substantive rules with binding legal effect in the determination of what constitutes wetlands under 40 C.F.R. § 230(t) and 33 C.F.R. § 328.3(b). Closely related to this matter is the question of whether the EPA Manual constitutes substantive rules subject to the Administrative Procedure Act ("APA") notice and comment requirements, 5 U.S.C. § 553.
 
 
 24
 The Hobbses contend that the EPA manual represents substantive rules subject to the public notice and comment requirements under the APA. Their argument in effect is the manual does not merely clarify and explain the process of wetlands determination, but rather expands federal jurisdiction.
 
 
 25
 Whether the manual is subject to APA depends on whether it constitutes interpretive rules or substantive rules. The former rules " 'are those which merely clarify or explain existing law or regulations,' and 'do not have the full force and effect of a substantive rule but [are] in the form of an explanation of particular terms.' " American Hospital Ass'n v. Bowen, 834 F.2d 1037, 1045 (D.C.Cir.1987) (citations omitted). In Jerri's Ceramic Arts v. Consumer Products Safety Comm'n, 874 F.2d 205 (4th Cir.1989), we noted the distinction between the two rules:
 
 
 26
 An interpretive rule simply state[s] what the administrative agency thinks the statute means, and only "remind[s]" affected parties of existing duties ... [while] a substantive or legislative rule has the force of law, and creates new law or imposes new rights or duties.
 
 
 27
 Id., 207. Moreover, this court held that in determining whether a rule was interpretive or substantive courts must consider the agency's intent. Id., at 208.
 
 
 28
 The intent behind the manuals and absence of the force of law make it clear that they are interpretive rules. The EPA manual states in its preface that it was "developed to address the need for operational and jurisdictional guidance." Moreover, the manual states that the methods offered for wetlands determinations "are the recommended approaches."
 
 
 29
 While the EPA manual does not possess the force of law, the EPA manual does represent a significant change in the definition and an expansion of jurisdiction. The change in definition, however, is premised upon the making of certain scientific assumptions regarding the presence of the three parameters for a wetlands determination. The Hobbses point to nothing in the record to suggest any explicitly political motivation or policy consideration behind the change in the parameter test. Without a showing of intent or legal force, the manuals are no more than interpretive rules.
 
 
 30
 Finally, for the reasons discussed, EPA was free to apply its own or another agency's manual; EPA possessed the independent authority. Moreover, the agency was not prevented from using the EPA manual under the APA. Accordingly, the district court was correct in allowing expert testimony with respect to all three manuals.
 
 C.
 
 31
 The contention that the district court incorrectly instructed the jury to determine if wetlands on the Hobbses' property were adjacent to waters of the United States is based upon a particularly weak premise. Again the Hobbses engage in proof-texting. Seizing upon the word "adjacent," they contend that their wetlands are not adjacent because they do not actually border waters of the United States.
 
 
 32
 Unfortunately for the Hobbs, the statute does not limit adjacency to literal bordering. The statute, which the judge quoted verbatim in the jury instruction, reads:
 
 
 33
 The term "adjacent" means bordering, contiguous, or neighboring. Wetlands separated from other waters of the United States by man-made dikes or barriers, natural river berms, beach dunes and the like are "adjacent wetland." 33 C.F.R. § 328.3(c). This reading of the statute was upheld in Riverside Bayview Homes:
 
 
 34
 ... the landward limit of Federal jurisdiction under Section 104 must include any adjacent wetlands that form the border or are in reasonable proximity to other waters of the United States, as these wetlands are part of this aquatic system.
 
 
 35
 424 U.S. at 133-134, quoting 42 Fed.Reg. 37,128 (1977) (emphasis added). Furthermore, the jury's factual determination that the lands were wetlands is not clearly in error. An expert in hydrology and hydrogeology testified that there was both a ground and surface water connection between the Hobbses' property and the Ware River. An EPA environmental scientist confirmed this observation based upon aerial photographs. The Hobbses' land is adjacent within the meaning of the statute.
 
 
 36
 Moreover, the Hobbses' contention that their land is not adjacent due to the presence of man-made, non-tidal drainage ditches dug on dry land is baseless. Such ditches fall within the express language of the statute. The term "adjacent" includes:
 
 
 37
 Wetlands separated from other waters of the United States by man-made dikes or barriers, natural river berms, beach dunes and the like....
 
 
 38
 33 C.F.R. § 328.3. Similarly, the contention that the statute is void for vagueness is without merit.
 
 D.
 
 39
 Next we turn to whether the district court violated the Hobbses' due process rights by denying them the opportunity to present evidence as to their good faith belief that administrative orders were invalid. We address the good faith aspect of their argument first. This court previously held that a district court erred when it refused to impose civil penalties under § 309 of the CWA, reasoning that:
 
 
 40
 [The language of the statute] leaves little doubt that, under the circumstances of this case, a penalty in some form is mandated. Liability under the Clean Water Act is a form of strict liability.
 
 
 41
 Stoddard v. Western Carolina Regional Sewer Authority, 784 F.2d 368, 374 (4th Cir.1979). Under the Stoddard standard good faith is not a defense. Moreover, the amount of the penalty to be levied is within the discretion of the court. State Water Control Board v. Train, 559 F.2d 921 (4th Cir.1977).
 
 
 42
 The procedural aspect of the Hobbses' due process argument is that there are no administrative procedures by which they could contest the EPA's orders. Moreover, the Hobbses aver that they were not provided with prior notice or an opportunity to be heard before the issuance of the administrative order. The Hobbses, therefore, conclude that the lack of due process protection prior to the imposition of liability for civil remedies violates their due process rights.
 
 
 43
 This contention is without merit. The administrative orders do not in themselves impose penalties. Instead pursuant to CWA § 309(d), the penalties were imposed by the district court following a jury determination that the Hobbses had violated the CWA. Furthermore, in Southern Pines Association v. United States, 912 F.2d 713 (4th Cir.1990), a landowner and a construction company similarly argued that the lack of opportunity to be heard prior to the issuance of a compliance order violated their due process rights. We held that as the company and the landowner would "have an opportunity to make their constitutional arguments at any enforcement proceeding before they are subjected to any injunction or penalty," there is no violation of the fifth amendment. Id., at 717. Likewise, the Hobbses are afforded constitutionally adequate process.
 
 E.
 
 44
 Paul Hobbs' contention that the record supported a jury instruction on estoppel is without merit. Specifically, he argues that the government is estopped from prosecuting him under § 404 of the CWA because he constructed the drainage ditches under the supervision and according to the design specifications of two Soil Conservation Service employees. The district court rejected this argument, because Paul Hobbs did not allege conduct by the SCS employees that was sufficient to estop the government.
 
 
 45
 In Zografov v. V.A. Medical Center, 779 F.2d 967 (4th Cir.1985), we suggested a high standard in order for a federal employee allegedly misled by a Equal Opportunity counselor regarding an employment discrimination suit to rely on estoppel. We held that the plaintiff "made no showing of affirmative misconduct on the part of the government, which is the least the court would require, even if that would suffice, to rely upon estoppel." We agree with the district court that Paul Hobbs did not allege or prove conduct adequate to estop the government.
 
 F.
 
 46
 The Hobbses aver that the district court abused its discretion in denying their Rule 60(b) motion. Specifically, they contend that the court abused its discretion in denying the motion to be relieved of the final judgment in light of "newly discovered evidence." The Hobbses argue that a September 26, 1990, Regulatory Guidance Letter ("RGL") issued by the Corps constitutes such evidence.
 
 
 47
 As a threshold matter, the RGL cannot be considered newly discovered evidence under Fed.R.Civ.P. 60(b)(2) as the letter did not exist at the time of trial. Moreover, there is not another "reason justifying relief from operation of the judgment" under Fed.R.Civ.P. 60(b)(6). In order for the Hobbses to secure relief under Rule 60(b) they must show timeliness, a meritorious defense, a lack of unfair prejudice to the government, and exceptional circumstances. Werner v. Carbo, 731 F.2d 204, 206-207 (4th Cir.1984). Even assuming the final three conditions were satisfied by the Hobbses, they cannot demonstrate that the evidence would constitute a meritorious defense. The letter, like the manuals, is a guidance document. The letter merely clarifies the relationship between the jurisdiction of the EPA and the Corps under the CWA § 404 and the jurisdiction of the SCS under the provisions of the Food Security Act of 1985, 16 U.S.C. §§ 3821-3823. As the district court noted the letter is "merely guidance and doesn't change the definition of wetlands under the regulations."
 
 V.
 
 48
 With respect to each of the issues on appeal, the district
 
 
 49
 court's judgment, bench rulings, and opinion are affirmed.
 
 
 50
 AFFIRMED.
 
 
 
 [1]
 We refer to the defendants collectively as "the Hobbses."
 
 
 [2]
 Revised Interim Final Edition of April 1988
 
 
 [3]
 For the sake of clarity, the publication is referred to as the "joint manual." Its official title is the Federal Manual for Identifying and Delineating Jurisdictional Wetlands